No. _____

# In the United States District Court for the Southern District of New York

IN RE UCHECHI AMUNEKE-NZE "ESTHER"
FOUNDER & DIRECTOR, THE PRO SE BLOG

PETITIONER

## EMERGENCY PETITION FOR WRIT OF MANDAMUS and/or WRIT OF PROHIBITION

On Emergency Petition for Writ of Mandamus and/or Writ of Prohibition to Charles Ezell & U.S. Office of Personnel Management (OPM)

## CERTIFICATE OF INTERESTED PERSONS

———

The undersigned counsel of record certifies the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate their possible recusal or disqualification:

| | |
|---|---|
| **Petitioner:** | I, Esther am a pro se litigant and founder of The Pro Se Blog, a legal advocacy initiative for self-represented litigants. *(Legal advocacy is our testimony. God hates injustice.)* |
| **Respondents:** | Charles Ezell & U.S. Office of Personnel Management (OPM) |

*/s/ Uchechi Amuneke-Nze*
Uchechi Amuneke-Nze, acting pro se
Founder and Director, The Pro Se Blog

## JURISDICTION & INTRODUCTION

1. This action is **<u>not</u>** brought under the Administrative Procedure Act (APA), 5 U.S.C. §§ 702–706. I am **<u>not</u>** seeking judicial review of a final agency action, and I do **<u>not</u>** invoke any cause of action grounded in the APA. As I understand it, Chevron Deference was overturned.

2. Instead, this is a **constitutional petition for a writ of mandamus and/or prohibition.** Jurisdiction is proper under 28 U.S.C. § 1361 (mandamus) and 28 U.S.C. § 1651(a) (prohibition), as this petition seeks to: **(1)** compel a federal agency who is subject to this court's jurisdiction to perform a non-discretionary legal duty, and **(2)** prohibit imminent unlawful action that exceeds the agency's statutory authority and violates constitutional due process protections.

3. Respondents are preparing to issue a rule that, despite its wording, would **violate the Separation of Powers Clause** of the U.S. Constitution and **illegally amend multiple federal statutes**—something OPM has no authority to do. These actions would also ignore multiple U.S. District Court orders and deny the general public, including me, the **required notice and comment** for a legislative rule under **5 U.S.C. § 553**, in violation of my **Fifth Amendment due process rights**.

4. I'm asking the Court to enforce a **clear, non-discretionary legal duty** before the rule is issued or proposed. This is **not** a policy disagreement or a request for APA review. I expressly object to any attempt to treat this petition as an APA case.

## STATEMENT OF RELIEF SOUGHT

<u>I respectfully ask that the Court consider this matter on an **expedited basis**, and issue a ruling **on or before April 9, 2025**, due to the imminent threat of unlawful agency action and the risk of irreversible harm if the challenged draft rule is finalized.</u> Additionally, issue a writ of mandamus and/or prohibition under 28 U.S.C. § 1361 and 28 U.S.C. § 1651(a), and to grant declaratory relief under 28 U.S.C. § 2201, finding that the OPM, its current leadership, and any future acting or appointed officials (collectively "Respondents") have acted ultra vires and in violation of the Constitution and the APA.

Specifically, I seek the following relief:

5. **A writ of prohibition**, preventing OPM from issuing or finalizing the draft rule titled "Suitability and Fitness of the Federal Workforce," or any materially similar rule, regulation, or internal policy, unless and until:

   - RESPONDENTS identify express statutory authority for the action;
   - RESPONDENTS comply fully with the notice and comment requirements of the APA;
   - RESPONDENTS provide truthful and adequate public notice describing the legal basis and actual impact of the proposed rule.

6. **A writ of mandamus**, compelling RESPONDENTS to:

   - Publicly acknowledge the limits of its statutory authority in matters of post-appointment removal;
   - Refrain from adopting, implementing, or enforcing any regulation that undermines the procedural rights afforded to federal employees under existing statutes;
   - Comply with its constitutional duties, including the **Separation of Powers**, **Due**

**Process**, and the requirement that substantive rules be issued only with clear congressional authorization and public participation.

7. **A declaratory judgment** stating that:

    - RESPONDENTS have **no statutory authority** to redefine or expand the grounds for removing federal employees beyond what is authorized in **Chapter 75 of Title 5, U.S. Code**;

    - The March 2025 draft rule constitutes an ultra vires action or **unlawful de facto legislative rule**, drafted for the purpose of enabling **mass removals of federal employees**, blocking them from future federal employment, and circumventing established statutory and constitutional protections;

    - The attempt to frame removals as "suitability" determinations to bypass existing law is a **violation of 5 U.S.C. § 553**, the **Separation of Powers Clause**, and the **Fifth Amendment's Due Process Clause**;

    - RESPONDENTS' proposed actions would violate the **APA's notice and comment requirements** and the **Fifth Amendment's due process guarantees**;

    - Any future attempt by **any OPM official**, including but not limited to the current Director, any Acting Director, Deputy Director, or successor in leadership, to issue or enforce a similar rule—whether under a new title or by similar means—shall be deemed a **knowing violation of clearly established law**, thereby **waiving any claim to qualified immunity**.

8. **Any further relief** the Court deems necessary to:

- Prevent irreparable harm to constitutional rights and the federal civil service system;
- Preserve the public's right to notice and comment;
- Deter all current and future OPM officials from unlawfully expanding agency power through unauthorized rulemaking

## ISSUES PRESENTED

9. Whether RESPONDENTS' draft rule unlawfully attempts to redefine "suitability" determinations—originally limited to pre-employment vetting—as a new, post-employment mechanism for firing already-hired federal employees without following existing removal procedures under Chapter 75.

10. Whether RESPONDENTS' attempt to expand its removal authority across federal agencies by regulation—adding new grounds for firing and limiting employee appeal rights—is an ultra vires act intended to bypass statutory limits and evade federal court rulings that reversed prior unlawful terminations.

## STATEMENT OF FACTS[1]

### I. BACKGROUND

**Presidential Memorandum on Suitability and Fitness**

1. On March 20, 2025, President Donald J. Trump issued a Presidential Memorandum titled "Strengthening the Suitability and Fitness of the Federal Workforce." ***See App.1***

---

[1] All factual allegations regarding the Office of Personnel Management (OPM), its officials, and the draft rule are made upon information and belief and in good faith, based on publicly available reports, the March 20, 2025 Presidential Memorandum, the March 26, 2025 draft regulation obtained by Federal News Network, and OPM's public statements and regulatory history.

2. In it, he told the Director of the OPM to start making final decisions about whether federal employees are "suitable" to keep working in government—even after they've already been hired.

3. In plain terms, this memo was telling OPM to come up with a new way to fire current federal employees and ban them from ever working for the federal government again, just like how OPM can reject applicants before they're hired.

4. The memorandum directs the OPM Director to propose regulations amending Part 731 of Title 5, Code of Federal Regulations (for hiring), to implement appropriate rules and procedures for these suitability determinations.

5. The memorandum emphasizes that any action taken must be consistent with applicable law.

**Leaked Draft of Proposed OPM Regulations**

6. On March 26, 2025, Federal News Network obtained a 43-page draft of proposed regulations from OPM. ***See App.2 and App.3***

7. The draft proposes expanding OPM's authority to remove federal employees deemed unsuitable based on post-appointment conduct.

8. Notably, the draft suggests limiting employees' ability to appeal such terminations to the Merit Systems Protection Board (MSPB).

9. The draft regulations introduce new criteria for removal, including failure to furnish testimony and failure to return official documents.

**Concerns Regarding the Draft Regulations**

10. <u>Expansion Beyond Statutory Authority</u>: The proposed regulations extend OPM's authority beyond hiring standards, encroaching upon established laws governing employee conduct and removal procedures.

11. <u>Circumvention of Court Orders and Due Process:</u> The draft regulations appear designed not only to limit appeal rights and introduce new grounds for firing employees, but also to sidestep existing federal court rulings that previously found the Trump administration's methods of removing federal employees to be unlawful and unconstitutional. This raises a serious concern that OPM is attempting to disobey or undermine judicial orders and repackage previously rejected termination schemes under the label of "suitability," in violation of both due process protections and the rule of law.

12. <u>Deviation from Established Procedures</u>: Existing laws, including **Chapter 75 of Title 5, U.S. Code**, outline specific procedures and causes for employee removal. The draft regulations seem to bypass these established standards.

**Legal Obligations of OPM**

13. OPM is legally obligated to operate within the limits of its statutory authority and in full compliance with the Constitution.

14. The Constitution assigns the power to make or amend laws solely to Congress. Any attempt by OPM to alter the statutory framework governing federal employment—through regulation rather than legislation—violates the Separation of Powers doctrine.

15. When OPM seeks to issue a legislative rule, it must follow the APA's required notice-and-comment process, which exists to ensure transparency, public participation, and

accountability.

16. Even when directed by a Presidential Memorandum, OPM's actions must remain within the law. The President cannot authorize the agency to ignore statutory requirements or constitutional safeguards. OPM is bound to respect both.

## II.   MANDAMUS / PROHIBITION STANDARD AND APPLICATION

**Legal Standard**

17. A writ of mandamus or prohibition is an extraordinary remedy, but it is available when three conditions are met:

    - The petitioner has a clear and indisputable right to the relief sought;
    - The respondent has a clear, non-discretionary duty to act—or to stop acting—under the law; and
    - There is no adequate alternative remedy available.
      *See Cheney v. U.S. Dist. Ct. for D.C.,* 542 U.S. 367, 380 (2004).

18. Mandamus is appropriate when a federal official fails to follow a legal duty, including duties created by the APA or the Constitution.

19. Prohibition is appropriate to stop officials from acting outside the law, especially when their actions threaten constitutional rights or the structure of lawful government.

**Clear Right to Relief / Petitioner's Standing**

20. I am an American citizen and a member of the general public who is interested in and directly affected by the rulemaking practices of federal agencies, including the OPM.

21. The Supreme Court has recognized that when the government is required to follow formal procedures—such as APA notice and comment—the public holds a constitutionally protected property interest in that process. *See Board of Regents v. Roth*, 408 U.S. 564 (1972); *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454 (1989).

22. Under the APA, I have a protected interest in receiving adequate notice and a meaningful opportunity to comment for any substantive rule proposed or adopted by OPM.

23. The APA requires agencies to provide clear notice and allow public comment on proposed legislative rules—unless the rule falls within a narrow exception. OPM does not have discretion to ignore this requirement when it seeks to change substantive legal rights or obligations.

24. Based on the contents of the leaked draft rule, OPM has attempted to bypass this legal obligation by using vague and misleading language to hide the rule's actual impact. If not for investigative reporting by Federal News Network, neither I nor the general public would have known that OPM was preparing to issue a rule with sweeping legal consequences—effectively denying us the APA-protected opportunity to participate. This violation directly infringes on my rights and those of the broader public.

**Clear Duty to Act Lawfully**

25. Agencies do not have discretion to skip procedures like notice and comment when they issue substantive rules. *See Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92 (2015); *Chrysler Corp. v. Brown,* 441 U.S. 281 (1979).

26. Agencies cannot create rules that function like laws without going through the proper

APA process. *See Appalachian Power Co. v. EPA*, 208 F.3d 1015 (D.C. Cir. 2000) (condemning "de facto" rules that bind the public without notice).

27. In this case, OPM drafted a 43-page proposed rule that expands its power to fire current federal employees and bar them from ever working in government again. It would do so outside the procedures set by Congress in **Chapter 75 of Title 5**.

28. The agency claims it is just updating "suitability" rules, but the substance shows otherwise. The draft rule creates new grounds for firing, strips appeal rights, and attempts to impose new legal standards on people who are already employed—all without congressional approval.

29. There is no statute, no budget law, and no constitutional provision that gives OPM the power to do this. These changes were not authorized by Congress. They were not lawful reductions in force. This was not reform—it was a backdoor purge.

30. In *Loper Bright Enterprises v. Raimondo,* 603 U.S. (2024), the Court overturned *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), holding that courts must exercise their own independent judgment when determining whether an agency action is lawful.

31. This is what the courts have called a "de facto legislative rule": an action that creates new rights or penalties while pretending not to. See *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007).

**No Adequate Alternative Remedy**

32. The draft rule has not yet been published in the Federal Register, but its release is

imminent, and it follows directly from President Trump's March 2025 memorandum. If the court waits, the damage may already be done.

33. A writ of prohibition is meant to stop unlawful actions before they happen. *See United States v. Hoffman*, 71 U.S. (4 Wall.) 158 (1866) ("Prohibition is preventive in nature... its function is to stop an act before it occurs."); *See also Ex parte Republic of Peru*, 318 U.S. 578 (1943).

34. There is no other remedy that can prevent OPM from going forward.

35. Only a writ—now, before publication—can stop these agencies from pretending the law doesn't apply to them.

**Why Mandamus and Prohibition Are Necessary**

36. This isn't about a simple disagreement over policy. It's about protecting the legal process, the APA, and the Constitution from officials who are trying to bypass them.

37. Agencies cannot act like lawmakers, writing new rules in secret, and then expect the courts and the public to go along with it. When they do that, they stop being agencies and start pretending to be Congress.

38. These officials know the law. If they try this again—if they push out another "suitability" rule to fire people or sidestep removal protections—they are doing so with full knowledge that what they're doing is illegal. That removes any shield of qualified immunity.

39. Mandamus and prohibition are the only tools that can stop these unlawful actions before they're complete, protect the rule of law, and prevent irreparable harm.

## CONCLUSION

OPM drafted a 43-page rule that would let it fire already-hired federal employees, label them "unsuitable," and block them from future government work—without following the process Congress requires. It doesn't cite clear legal authority. It skips notice and comment. It rewrites the rules for every federal agency behind closed doors. This isn't regulation. It's legislation without Congress.

The Constitution doesn't allow that. The APA doesn't allow that. The public isn't supposed to be shut out of that process—and neither are the courts. The rule hasn't been published yet. This Court has the chance to stop it before the damage is done.

A writ of prohibition and mandamus is the only remedy that fits.


For the greater plot,


/s/ *Uchechi Amuneke-Nze*
Uchechi Amuneke-Nze
300 W. First Street
Box 191799
Arlington, TX 76019
(817) 405-4182
ucheamuneke.prose@gmail.com


*"Two are better than one, because they have a good return for their labor. If either of them falls down, one can help the other up. But pity anyone who falls and has no one to help them up-- Though one may be overpowered, two can defend themselves. A cord of three strands is not easily broken."*
— *Ecclesiastes 4:9–12 (NIV)*